1

2

3

4                              UNITED STATES DISTRICT COURT

5                            NORTHERN DISTRICT OF CALIFORNIA

6                                  SAN FRANCISCO DIVISION

7

8     N.N.,[1]                                    Case No.  23-cv-03489-PHK

9                    Plaintiff,

10          v.                                   **ORDER OF REMAND**

11    MARTIN O'MALLEY, Commissioner of
      Social Security,
12
                     Defendant.
13

14          Plaintiff N.N. ("Plaintiff") brings this action under the Social Security Act ("the Act"), 42

15    U.S.C. § 405(g), seeking judicial review of a final decision by the Commissioner of the Social

16    Security Administration, Defendant Martin O'Malley ["Commissioner"], denying her application

17    for disability insurance benefits.  [Dkt. 1].  The Parties have consented to proceed before a

18    Magistrate Judge for all purposes, including the entry of final judgment, under 28 U.S.C. § 636(c).

19    *See* Dkts. 4-5.  Plaintiff filed a Motion for Summary Judgment, which the Court construes as

20    Plaintiff's Opening Brief, the Commissioner filed a Cross-Motion for Summary Judgment, which

21    the Court construes as the Commissioner's Response Brief, and Plaintiff filed a Reply Brief.[2]

22    _____

23    [1] In actions involving requested review of a decision by the Commissioner of the Social Security
      Administration, the Court generally uses the first name and initial of last name (or just the initials)
24    of the Plaintiff in the Court's public Orders out of an abundance of caution and regard for the
      Plaintiff's potential privacy concerns.

25    [2] The Parties filed their briefing as cross-motions for summary judgment which was the standard
26    practice in this District for many years.  Effective December 1, 2022, the Supplemental Rules for
      Social Security establish a "simplified procedure that recognizes the essentially appellate character
27    of actions that seek only review of an individual's claims on a single administrative record" and
      "displace[] summary judgment as the means of review on the administrative record."  Fed. R. Civ.
28    P. Supp. Soc. Sec. R. advisory committee's note; *see* Fed. R. Civ. P. Supp. Soc. Sec. R. 5 ("The
      action is presented for decision by the parties' briefs.").  Accordingly, the Court construes the

United States District Court
Northern District of California

[Dkts. 10, 12-13].  The Commissioner has also filed the Administrative Record.  [Dkt. 8 (hereinafter, "AR")].

After carefully analyzing the briefs, the record, and the applicable law, the Court **REVERSES** the Commissioner's final decision and **REMANDS** for further proceedings consistent with this Order.

## BACKGROUND

The following background focuses only on the elements of Plaintiff's history that are relevant to the Court's analysis herein.

Plaintiff was born on April 13, 1954; she was forty-nine years old on the disability onset date and sixty-years old on the date that she protectively applied for benefits.  [AR 204, 3146-48].  She speaks English and has a master's degree in art.  [AR 216, 218, 3147].  Her employment history includes positions with the YMCA as a member services associate, a bank draft administrator, a business manager, and an administrative services director.  [AR 219, 3149-51].

On February 8, 2015, Plaintiff protectively filed an application for a period of disability and disability insurance benefits, pursuant to Title II of the Act.  [AR 204-07].  In her application, Plaintiff alleged that she had been unable to work since May 15, 2007, due to congenital spinal stenosis, spondylolisthesis, nerve compressions, arthritis, vertebral spurs, and flat spine.  [AR 206, 217].  The Commissioner denied Plaintiff's application, initially on November 20, 2015, and upon reconsideration on March 23, 2016.  [AR 115-25].

### The 2018 Hearing

After the reconsideration decision, Plaintiff successfully requested a hearing before an Administrative Law Judge ("ALJ").  [AR 126-99].  That hearing took place on March 20, 2018 before ALJ Serena Hong.  [AR 51-91].  Plaintiff appeared and testified at the hearing, accompanied by her attorney.  *Id.*  The ALJ also heard testimony from a Vocational Expert.  *Id.*

At the 2018 hearing, Plaintiff's attorney first amended Plaintiff's alleged disability onset

Parties' summary judgment briefing as Plaintiff's Opening Brief, the Commissioner's Response Brief, and Plaintiff's Reply Brief.  *See Giselle N. v. Kijakazi*, 694 F. Supp. 3d 1193 at n.1 (N.D. Cal. 2023).

1    date to June 1, 2004.  [AR 60].  Plaintiff confirmed her understanding that she would only be

2    entitled to benefits to the extent that the ALJ found her disabled on or before December 31, 2009,

3    which was the date she was last insured.  [AR 62-63].

4         The ALJ then heard testimony from Plaintiff regarding her employment history and

5    medical impairments.  Plaintiff testified that she worked for the YMCA in various roles from 1994

6    until 2004.  [AR 65-69].  Plaintiff testified that she stopped working in 2004 due to "tremendous

7    pain" in her lumbar spine and left arm, which rendered her unable to sit, stand, or walk for

8    significant portions of the day.  [AR 69].  Plaintiff testified that she had undergone multiple

9    surgeries to alleviate her pain, which resulted in only temporary relief.  [AR 73-74, 76-77].

10   Plaintiff testified that she received epidural steroid injections but denied any noticeable

11   improvement from those treatments.  [AR 76].  She reported that she takes prescribed narcotic

12   pain medication, which "helps," but which causes side effects such as drowsiness and

13   constipation.  [AR 77].

14        Plaintiff further testified to the severity and debilitating effects of the impairments from

15   which she suffers.  Plaintiff testified that she is often bedridden for three to four days at a time.

16   [AR 70-71].  She testified that she typically lays in a reclining chair all day and gets up only to eat,

17   use the bathroom, or bathe.  [AR 71-72].  She testified that she often sleeps in the reclining chair

18   at night as well.  [AR 72].  Plaintiff told the ALJ that she must rest up a day in advance of any

19   errands.  [AR 74-75].  She testified that she must grocery shop "in stages" and "lay on ice" after

20   she returns home.  *Id.*  Plaintiff testified that her pain makes her tired and irritable and affects her

21   concentration.  [AR 77-79].  She testified that she "rarely" goes to the movies anymore, because

22   "[i]t's hard to sit for long periods of time," and because her "ability to concentrate isn't always

23   there."  [AR 79].  Plaintiff testified that she attempted to reenter the workforce in 2008, but due to

24   a number of factors, including "the recession," worsening back pain, and a lack of "stamina," her

25   job search proved unsuccessful.  [AR 80-82].

26        On May 31, 2018, the ALJ issued a written decision denying Plaintiff's application for

27   disability insurance benefits, and on June 6, 2019, the Appeals Council denied Plaintiff's request

28   for review of the ALJ's decision.  [AR 1-6, 16-26].

Plaintiff thereafter filed a complaint in this Court seeking review of the Commissioner's 2018 final decision.  [AR 3209-12].  On September 30, 2021, the Court reversed and remanded the case, pursuant to sentence four of 42 U.S.C. § 405(g), for further administrative proceedings.  [AR 3225-41].

On remand, the Appeals Council vacated the Commissioner's 2018 decision and remanded the case to an ALJ for further proceedings consistent with the Court's 2021 Order.  [AR 3178-82].  The Appeals Council directed the ALJ to "take any further action needed to complete the administrative record and issue a new decision."  [AR 3180].

**The 2023 Hearing**

A hearing was then held, on February 16, 2023, again before ALJ Serena Hong.  [AR 3140-177].  Plaintiff appeared and testified at the hearing, accompanied by her attorney.  *Id.*  The ALJ also heard testimony from a Vocational Expert.  *Id.*

At the 2023 hearing, Plaintiff summarized and reiterated her employment history.  [AR 3149-51].  Plaintiff testified that she is unable to work primarily due to congenital spinal stenosis.  [AR 3151].  Plaintiff recounted her extensive medical history, including numerous surgical procedures on her back, neck, left leg, and hands.  [AR 3151-52, 3155, 3160, 3164].

**The ALJ's 2023 Written Decision**

On April 19, 2023, the ALJ issued a written decision determining that: (1) Plaintiff was disabled within the meaning of the Act from June 1, 2004 through August 31, 2005; (2) Plaintiff thereafter experienced medical improvement such that Plaintiff's disability ended on September 1, 2005; and (3) Plaintiff was not disabled within the meaning of the Act from that date through the date of the ALJ's written decision.  [AR 3092-3016].

This timely appeal followed.  *See* Dkt. 1.

## STANDARD OF REVIEW

A district court has the "power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the case for a hearing."  42 U.S.C. § 405(g).  The Court's review in such cases is limited to determining: (1) whether substantial evidence supports the

United States District Court
Northern District of California

4

1  Commissioner's decision; and (2) whether the Commissioner's decision comports with relevant

2  legal standards.  *Stout v. Comm'r, Soc. Sec. Admin.*, 454 F.3d 1050, 1052 (9th Cir. 2006) ("We

3  will uphold the Commissioner's denial of benefits if the Commissioner applied the correct legal

4  standards and substantial evidence supports the decision."); *accord Woods v. Kijakazi*, 32 F.4th

5  785, 788 (9th Cir. 2022); *see generally* 42 U.S.C. § 405(g).

6      "Substantial evidence" is "more than a mere scintilla"—it is "such relevant evidence as a

7  reasonable mind might accept as adequate to support a conclusion.  *Woods*, 32 F.4th at 788

8  (quoting *Biestek v. Berryhill*, 587 U.S. 97, 103 (2019)).  "Overall, the standard of review is highly

9  deferential."  *Kitchen v. Kijakazi*, 82 F.4th 732, 738 (9th Cir. 2023) (quoting *Rounds v. Comm'r*,

10  807 F.3d 996, 1002 (9th Cir. 2015)); *see Biestek*, 587 U.S. at 103 ("[W]hatever the meaning of

11  'substantial' in other contexts, the threshold for such evidentiary sufficiency is not high.").  In

12  evaluating whether substantial evidence supports a finding, the Court "must review the

13  administrative record as a whole, weighing both the evidence that supports and the evidence that

14  detracts from the Commissioner's conclusion."  *Reddick v. Chater*, 157 F.3d 715, 720 (9th Cir.

15  1998).  Any conflict in the evidence is to be resolved by the ALJ, and not the Court.  *Smartt v.

16  Kijakazi*, 53 F.4th 489, 494 (9th Cir. 2022) ("Where evidence is susceptible to more than one

17  rational interpretation, the ALJ's decision must be affirmed.").

18      **Establishing Disability under the Act**

19      An individual is "disabled" if they are unable to engage in any substantial gainful activity

20  owing to a physical or mental impairment that is expected to result in death or has lasted, or is

21  expected to last, for a continuous period of at least twelve months.  42 U.S.C. § 423(d)(1)(A);

22  *Drouin v. Sullivan*, 966 F.2d 1255, 1257 (9th Cir. 1992).

23      The five-step analysis for determining whether an individual is disabled requires the ALJ

24  to consider whether the claimant: (1) has engaged in "substantial gainful activity" during the

25  alleged period of disability; (2) has a medically determinable impairment or combination of such

26  impairments that is "severe;" (3) has a condition that meets or equals the severity of a listed

27  impairment; (4) has the residual functional capacity ("RFC") to return to their past relevant work;

28  and, if not, (5) can perform other work in the national economy.  20 C.F.R. §§ 404.1520(a)(4),

United States District Court
Northern District of California

416.920(a)(4); *Wischmann v. Kijakazi*, 68 F.4th 498, 504 & n.3 (9th Cir. 2023).  It is well-settled that, under this analysis, the claimant has the burden to establish a *prima facie* case of disability at steps one through four.  *Triechler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1096 n.1 (9th Cir. 2014) (quoting *Hoopai v. Astrue*, 499 F.3d 1071, 1074-75 (9th Cir. 2007)).  The burden then shifts to the Commissioner, at step five, to show that the claimant retains sufficient RFC to perform work in the national economy, given the claimant's age, education, and work experience. *Id.*  A finding that a claimant is "disabled" or "not disabled" at any point in the five-step review is conclusive and terminates the analysis.  *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999) (citing 20 C.F.R. § 404.1520).  To be disabling, the claimant's condition must be so functionally limiting as to preclude any substantial gainful activity for at least twelve consecutive months.  42 U.S.C. §§ 423(d)(1)(A), (2)(A).

### Establishing Continuing Disability Under the Act

If the claimant is found to be disabled under the Act, the ALJ must determine whether the claimant's disability continues through the date of the decision.  "A Social Security disability benefits claimant is no longer entitled to benefits when substantial evidence demonstrates (1) 'there has been any medical improvement in the [claimant's] improvement' and (2) the claimant 'is now able to engage in substantial gainful employment.'"  *Attmore v. Colvin*, 827 F.3d 872, 873 (9th Cir. 2016) (quoting 42 U.S.C. § 423(f)(1)).

The ALJ follows an eight-step sequential evaluation process to determine whether a recipient continues to be disabled.  20 C.F.R. § 404.1594(f); *Nathan v. Colvin*, 551 F. App'x 404, 407 (9th Cir. 2014).  In the first step, the Commissioner must determine whether the recipient is currently engaged in substantial gainful activity; if so, she is no longer disabled.  20 C.F.R. § 404.1594(f)(1); *McCalmon v. Astrue*, 319 F. App'x 658, 659 (9th Cir. 2009).

If not, the second step requires the Commissioner to determine whether she has an impairment or combination of impairments that meets or equals an impairment in the Listing of Impairments set forth at 20 C.F.R. part 404, subpart P, appendix 1; if so, she continues to be disabled.  20 C.F.R. § 404.1594(f)(2).

If not, the third step requires the Commissioner to determine whether medical

United States District Court
Northern District of California

1    improvement has occurred.  20 C.F.R. § 404.1594(f)(3).  If so, the analysis proceeds to step four;

2    if not, the analysis proceeds to step five.  *Id.*

3          If medical improvement has occurred, the fourth step of the eight-step evaluation process

4    requires the Commissioner to determine whether the improvement is related to the recipient's

5    ability to work—that is, whether there has been an increase in the recipient's RFC from the most

6    recent favorable medical decision.  20 C.F.R. § 404.1594(f)(4).  If medical improvement is not

7    related to the recipient's ability to work, the analysis proceeds to step five; if it is, it proceeds to

8    step six.  *Id.*

9          If medical improvement has not occurred or if it is not related to the recipient's ability to

10   work, the fifth step requires the Commissioner to determine whether an exception to medical

11   improvement applies.  20 C.F.R. § 404.1594(f)(5).  Under the first group of exceptions, the

12   Commissioner can find a recipient no longer disabled even though the recipient has not medically

13   improved if the recipient is able to engage in substantial gainful activity; if one of those exceptions

14   applies, the analysis proceeds to step six.  20 C.F.R. § 404.1594(d).  Under the second group of

15   exceptions, the Commissioner can find a recipient no longer disabled without determining medical

16   improvement or an ability to engage in substantial gainful activity; if one of those exceptions

17   applies, the recipient is no longer disabled.  20 C.F.R. § 404.1594(e).  If none of the exceptions

18   apply, the recipient continues to be disabled.  20 C.F.R. § 404.1594(f)(5).

19         The sixth step of the eight-step evaluation process requires the Commissioner to determine

20   whether all of the recipient's current impairments in combination are "severe," which means that

21   they significantly limit the recipient's ability to do basic work activities; if not, the recipient is no

22   longer disabled.  20 C.F.R. § 404.1594(f)(6).

23         If the recipient's current impairments in combination are severe, the seventh step requires

24   the Commissioner to determine whether the recipient has sufficient RFC, based on all of their

25   current impairments, to perform past relevant work; if so, the recipient is no longer disabled.  20

26   C.F.R. § 404.1594(f)(7).

27         If the recipient is unable to do her past relevant work, the eighth and final step requires the

28   Commissioner to determine, using the RFC assessed in step seven, whether the recipient can

United States District Court
Northern District of California

7

1   perform any other substantial gainful work; if so, the recipient is no longer disabled.  20 C.F.R.

2   § 404.1594(f)(8).  If not, the recipient continues to be disabled.  *Id.*

3                                                    **ANALYSIS**

4           Plaintiff raises several issues on her present appeal.  As her first point of contention,

5   Plaintiff argues that the ALJ erred at step two of the five-step evaluation process by finding that

6   her anxiety and depression were non-severe.  [Dkt. 10 at 12-14].  Second, Plaintiff argues that the

7   ALJ failed to incorporate all of Plaintiff's limitations into the RFC assessment.  *Id.* at 19-20.

8   Next, Plaintiff argues that the ALJ's RFC determination with respect to the post-August 31, 2005

9   time period is not supported by substantial evidence, because the ALJ improperly evaluated

10  Plaintiff's credibility and subjective allegations of pain.  *Id.* at 14-18.  Fourth, Plaintiff argues that

11  the ALJ continuing disability review was fatally flawed.  *Id.* at 20-25.  On this issue, Plaintiff

12  contends, specifically, that the ALJ's determination that Plaintiff's "capacity to remain on task

13  improved such that she was no longer disabled as of September 1, 2005" is not supported by

14  substantial evidence.  *Id.* at 22.

15          The Commissioner insists, however, that the ALJ properly considered the entire

16  evidentiary record, and followed the applicable law, in determining that Plaintiff was not disabled

17  from September 1, 2005 through April 19, 2023.  [Dkt. 12 at 4-9].

18  **I.      Summary of ALJ's 2023 Written Decision**

19               The ALJ's Application of the Five-Step Process

20          In her written decision, the ALJ first determined that Plaintiff met the insured status

21  requirements of the Social Security Act through December 31, 2009.  [AR 3096].

22          The ALJ then found, at step one, that Plaintiff "ha[d] not engaged in substantial gainful

23  employment since June 1, 2004, the date [Plaintiff] became disabled[.]"  *Id.*

24          At step two of the analysis, the ALJ found that, from June 1, 2004 through August 31,

25  2005, Plaintiff suffered from four severe impairments: "degenerative disc disease, status post

26  multiple surgeries, carpal tunnel syndrome, and right patellofemoral syndrome."  *Id.*  The ALJ

27  also found that, during that same time period, Plaintiff suffered from two non-severe impairments:

28  depression and anxiety.  *Id.*

United States District Court
Northern District of California

8

At step three, the ALJ found that, during that same period, Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. [AR 3098].

Prior to reaching step four, the ALJ assessed Plaintiff's RFC and found that, from June 1, 2004 through August 31, 2005, Plaintiff was capable of sedentary work, subject to the following limitations:

> [She] cannot climb ladders, ropes[,] and scaffolds.  She can perform other postural maneuvers such as stooping, crouching[,] and crawling as defined in the SCO on an occasional basis.  She must avoid concentrated exposure to hazards such as unprotected heights and moving machinery.  She can stand and walk for up to 4 hours in an 8-hour workday.  She can only sit or stand for up to 30-minute increments before needing to change positions for one minute.  She would be off task or non productive [sic] for any number of reasons, that might be a need for an additional break, a lack of concentration[,] a need to step away from the workplace or otherwise be absent, any number of reasons, the person would be off task or non-productive for 20% of the workday or workweek.

*Id.*

In establishing this RFC, the ALJ evaluated Plaintiff's subjective allegations of pain, the objective medical evidence, and the opinion evidence.  [AR 3098-101].  The ALJ determined that Plaintiff's medically determinable impairments could reasonably be expected to produce the alleged symptoms and that Plaintiff's statements concerning the intensity, persistence, and limiting effects of these symptoms was "generally consistent with the evidence from June 1, 2004 through August 31, 2005." [AR 3101].

At step four, the ALJ determined, based on the Vocational Expert's testimony, that from June 1, 2004 through August 31, 2005, Plaintiff was unable to perform any past relevant work.  *Id.*

Prior to reaching step five, the ALJ determined that Plaintiff "was an individual closely approaching advanced age" on the established disability onset date; that Plaintiff had at least a high school education; and that Plaintiff's "acquired job skills do not transfer to other occupations within the [RFC] defined above." *Id.*

At step five, the ALJ found that, "[f]rom June 1, 2004 through August 31, 2005, considering [Plaintiff's] age, education, work experience, and residual functional capacity, there

United States District Court
Northern District of California

were no jobs that existed in significant numbers in the national economy that [Plaintiff] could have performed." *Id.* For that reason, the ALJ concluded that Plaintiff was under a "disability," as defined by the Social Security Act, from June 1, 2004 through August 31, 2005. [AR 3102].

<u>The ALJ's Application of the Eight-Step Process</u>

After concluding that Plaintiff was disabled for the first portion of the relevant time period, the ALJ then assessed whether Plaintiff remained disabled during the second portion of the relevant time period. [AR 3102-05]. After using the eight-step sequential evaluation process outlined above, the ALJ found that Plaintiff was not disabled from September 1, 2005 through the date of the decision on April 19, 2023. [AR 3105].

Because the ALJ already found at step one of the previously discussed five-step sequential evaluation process that Plaintiff had not engaged in substantial gainful employment since June 1, 2004, the ALJ began the continuing disability assessment at step two of the eight-step sequential evaluation process. [AR 3096, 3102].

At step two of the eight-step evaluation process, the ALJ found that Plaintiff had not developed any new impairment(s) "since September 1, 2005, the date [Plaintiff's] disability ended, through December 31, 2010." [AR 3102]. For that reason, the ALJ found that Plaintiff's "severe impairments after August 31, 2005 through December 31, 2010 are the same as those present from June 1, 2004 through August 31, 2005." *Id.* After determining that Plaintiff had not developed any new severe impairments, the ALJ concluded her analysis at step two by finding that, since September 1, 2005, Plaintiff has not had any impairments, either or alone or in combination, that meet or medically equal the severity of one of the Listed Impairments. *Id.*

At step three, the ALJ found that "[m]edical improvement occurred as of September 1, 2005, the date [Plaintiff's] disability ended (20 CFR 404.1494(b)(1))." *Id.* As support for that finding, the ALJ referenced evidence in the record suggesting that Plaintiff "recovered from her surgeries and was no longer limited as she was previously." *Id.* Specifically, the ALJ observed that Plaintiff was "able to do activities such as flying to Southern California, caring for family members[,] and other activities." *Id.* The ALJ also referenced treatment records "during this period" with normal findings. *Id.*

At step four, the ALJ determined that "[t]he medical improvement that has occurred is related to the ability to work because there has been an increase in [Plaintiff's RFC] (20 CFR 404.1594(b)(4)(i))" when "comparing [Plaintiff's RFC] for the period during which she was disabled with the [RFC] beginning September 1, 2005." *Id.* The ALJ specifically determined that, beginning September 1, 2005, Plaintiff had the RFC to perform "sedentary work as defined in CFR 404.1567(a)" subject to the following limitations:

> [The claimant] cannot climb ladders, ropes[,] and scaffolds. She can perform other postural maneuvers such as stooping, crouching[,] and crawling as defined in the SCO on an occasional basis. She must avoid concentrated exposure to hazards such as unprotected heights and moving machinery. She can stand and walk for up to 4 hours in an 8-hour workday. She can only sit or stand for up to 30 minute increments before needing to change positions for one minute.

[AR 3102-03].

In establishing this RFC, the ALJ evaluated Plaintiff's subjective allegations of pain, as well as the objective medical evidence. [AR 3103-04]. The ALJ determined that, while Plaintiff's impairments could reasonably be expected to produce the alleged symptoms, Plaintiff's testimony concerning the intensity, persistency, and limiting effects of those symptoms was "not entirely consistent with medical evidence and other evidence in the record." [AR 3104]. The ALJ likewise concluded that the record showed that, while Plaintiff "continued to get treatment for her impairments" after August 31, 2005, her examinations were "typically normal" and her "medical condition improved beginning on September 1, 2005." [AR 3103]. The ALJ further concluded that she "managed her pain with conservative management." [AR 3104].

At step four, the ALJ determined that, "[b]eginning on September 1, 2015, [Plaintiff] has been capable of performing past relevant work as an administrative assistant (DOT 169.167-010; sedentary; svp 7), as generally performed. This work does not require the performance of work-related activities precluded by [Plaintiff's] current residual functional capacity (20 CFR 404.1565)." [AR 3104-05]. Having determined that Plaintiff can perform her past relevant work, the ALJ concluded that "[Plaintiff's] disability ended September 5, 2005, and [Plaintiff] has not become disabled again since that date (20 CFR 404.1594(f)(8)) through December 31, 2010." [AR 3105].

The ALJ further determined that, since Plaintiff applied for benefits on February 10, 2015, Plaintiff was not entitled to disability insurance benefits retroactively, because such benefits "are only payable up to 12 months retroactive to the date of the application" and "the application was filed almost 10 years after [Plaintiff's] disability ended."  [AR 3105-06].  The ALJ found, for that same reason, that Plaintiff was not entitled to a period of disability.  *Id.*

The ALJ's determinations in the 2023 written decision prompted Plaintiff's present request for judicial review.

## II.    Whether the ALJ Erred in Evaluating Plaintiff's Mental Impairments

Plaintiff assigns two bases for errors in the ALJ's written decision, based on the evaluation of Plaintiff's mental impairments.  First, Plaintiff argues that the ALJ erred at step two of the sequential evaluation analysis by finding that her medically determinable impairments of anxiety and depression did not cause more than minimal limitations in her ability to perform basic work activities, and therefore, were non-severe.  [Dkt. 10 at 12-14].

Second, and as a separate basis, Plaintiff argues that the ALJ's conclusion as to Plaintiff's RFC was erroneous because (1) the ALJ failed to consider and include Plaintiff's mental limitations in the RFC assessment, and (2) the ALJ erred by relying on a hypothetical question that did not account for such limitations.  *Id.* at 19-20.

Consideration of Mental Impairments at Step 2

"At step two of the disability analysis, the ALJ must determine whether the claimant has any 'severe medically determinable' impairments."  *Ferguson v. O'Malley*, 95 F.4th 1194, 1198 (9th Cir. 2024) (quoting 20 C.F.R. § 416.920(a)(4)(ii)).  "A 'severe impairment' is one that significantly limits a claimant's ability to perform basic work activities."  *Id.* (quoting 20 C.F.R. § 416.920(c)).  The regulations define "basic work activities" as "the abilities and aptitudes necessary to do most jobs," which include physical functions such as walking, standing, sitting, pushing, and carrying, and mental functions such as understanding and remembering simple instructions, responding appropriately in a work setting, and dealing with changes in a work setting.  20 C.F.R. §§ 404.1522(b), 416.922(b).

"An impairment is not severe if it is merely 'a slight abnormality (or combination of slight

United States District Court
Northern District of California

1    abnormalities) that has no more than a minimal effect on the ability to do basic work activities.'"

2    *Webb v. Barnhart*, 433 F.3d 683, 686 (9th Cir. 2005) (quoting SSR 96-3(p)).  The step-two inquiry

3    is "merely a threshold determination meant to screen out weak claims."  *Buck v. Berryhill*, 869

4    F.3d 1040, 1048 (9th Cir. 2017) (citing *Bowen v. Yuckert*, 48 U.S. 137, 146-47 (1987)).

5          An ALJ's finding that a claimant's mental impairments are non-severe is supported by

6    substantial evidence if the ALJ properly considered the claimant's mental health records when

7    assessing the claimant's mental functioning under the "paragraph B" criteria.  *Woods*, 32 F.4th at

8    794 (citing 20 C.F.R. pt. 404, subpt. P, app. 1 § 12.00.A.2.b).  In evaluating the severity of a

9    mental impairment, an ALJ must use the "paragraph B" criteria from Section 12.00E of the

10   Appendix 1 listing of impairments.  20 C.F.R. §§ 404.1520a(a) ("[W]hen we evaluate the severity

11   of mental impairments . . . we *must* follow a special technique at each level in the administrative

12   review process.  We describe this special technique in paragraphs (b) through (e) of this section.")

13   (emphasis added), 404.1520a(c)(2)-(3), 416.920a(c)(2)-(3).  Accordingly, an ALJ will use the

14   paragraph B "four broad functional areas" and "rate the degree of [the claimant's] functional

15   limitation" to: (1) "[u]nderstand, remember, or apply information;" (2) "interact with others;" (3)

16   "concentrate, persist, or maintain pace;" and (4) "adapt or manage oneself."  20 C.F.R. §§

17   404.1520a(c)(3), 416.920a(c)(3).

18         In rating the degree of limitation in each of the four functional areas, an ALJ "will use the

19   following five-point scale: None, mild, moderate, marked, and extreme."  20 C.F.R.

20   §§ 404.1520a(c)(4), 416.920a(c)(4).  If the ALJ rates the claimant's limitations as "none" or

21   "mild" in each of the four areas, the ALJ "will generally conclude that [the claimant's]

22   impairment(s) is not severe, unless the evidence otherwise indicates that there is more than a

23   minimal limitation in [the claimant's] ability to do basic work activities."  20 C.F.R.

24   §§ 404.1520a(d)(1), 416.920a(d)(1).

25         Step two findings must be based upon medical evidence.  20 C.F.R. §§ 404.1520(a),

26   416.920(a).  The ALJ may draw inferences about the severity of an impairment based on the

27   degree of treatment the claimant sought.  *Flaten v. Sec'y of Health & Hum. Servs.*, 44 F.3d 1453,

28   1464 (9th Cir. 1995).

United States District Court
Northern District of California

1   In her written decision, the ALJ concluded that Plaintiff's medically determinable mental

2   impairments of anxiety and depression, considered singly and in combination, "did not cause more

3   than minimal limitation in [Plaintiff's] ability to perform basic mental work activities," and thus,

4   were non-severe.  [AR 3096].  The ALJ provided the following reasons for this finding: (1)

5   Plaintiff's symptoms "appeared to be largely situational;" (2) her complaints of depression "often

6   occurred during times of personal stress, such as the death of her mother and the need to care for

7   her father;" (3) her anxiety symptoms "were primarily related to her medications;" (4) she

8   "attributed her mental health symptoms to hormonal changes" for which she requested hormone

9   replacement therapy; (5) while she sought counseling in mid-2009, she declined referrals to

10  psychiatric or psychological care "throughout most of the relevant period;" and (6) she "managed

11  her symptoms with Valium on an as-needed basis."  *Id.*

12      In evaluating the severity of Plaintiff's anxiety and depression, the ALJ considered and

13  discussed the paragraph B criteria.  [AR 3096-98].  First, the ALJ found that Plaintiff had no

14  limitations in understanding, remembering, or applying information because: (1)

15  Plaintiff "acknowledged" in an April 2015 Function Report that she was able to follow written and

16  oral instructions "very well;" (2) Plaintiff "accomplished daily living activities such as making

17  simple meals, doing light household cleaning, driving, shopping in stores and by computer,

18  managing her finances, keeping doctor appointments, and repeatedly traveling to southern

19  California to care for her elderly father;" (3) medical records show that Plaintiff "was able to

20  provide information about her health and treatment history, answer questions and follow

21  instructions from health care providers, and comply with treatment;" and (4) Plaintiff's medical

22  records "do not indicate that any provider noted obvious problems with her memory, intelligence,

23  or judgment."  [AR 3097].

24      Second, the ALJ found that Plaintiff had mild limitations in her ability to interact with

25  others.  *Id.*  The ALJ acknowledged that Plaintiff "socialized much less often after the alleged

26  onset date" but attributed this "primarily to physical discomfort."  *Id.*  The ALJ supported this

27  finding by citing Plaintiff's reports of daily living, including that she spends time with family,

28  keeps in touch with people via her iPad, travels, goes shopping, and dines out approximately one

14

United States District Court
Northern District of California

per month. *Id.* The ALJ also cited records showing medical providers found her to be pleasant, cooperative, appropriately responsive, with normal speech and behavior. *Id.*; *see* AR 279-80.

Third, the ALJ determined that Plaintiff had mild limitation in her ability to concentrate, persist, or maintain pace. [AR 3097]. As support for this finding, the ALJ cited to Plaintiff's testimony that she attributed her difficulties with concentration "primarily to physical discomfort." *Id.* The ALJ also cited to Plaintiff's 2015 Function Report in which she denied any problems with paying attention and checked a box indicating that she is able to finish what she starts. *Id.*; *see* AR 280. The ALJ also referenced a lack of medical records showing distractibility. [AR 3097].

Fourth, the ALJ concluded that Plaintiff had no limitation in her ability to adapt or manage herself. *Id.* As support for this finding, the ALJ cited to Plaintiff's aforementioned activities of daily living. *Id.* The ALJ also cited to examination records showing that Plaintiff was only occasionally found to be anxious or depressed, as well as a lack of evidence showing that Plaintiff "exhibited problems with temper-control." *Id.*

The ALJ thus concluded that because Plaintiff's medically determinable mental impairments cause no more than a "mild" limitation in any of the four functional areas, and because the evidence does not otherwise indicate that Plaintiff's anxiety and depression cause more than a minimal limitation in her ability to perform basic work activities, Plaintiff's mental impairments are non-severe. *Id.*

Plaintiff argues that the ALJ's non-severity finding is not supported by substantial evidence because: (1) even though "situational" stressors or medications may have contributed to Plaintiff's mental health symptoms, the regulations do not expressly "allow[] for an impairment to be deemed non-severe because it was exacerbated by things such as stress and medications;" (2) Plaintiff's ability to perform household chores, alone, "does not clearly establish" that Plaintiff's mental impairments would not cause more than minimal limitations in a work setting across an entire full-time workweek; and (3) the record contains evidence regarding the severity of her mental impairments. [Dkt. 10 at 13-14].

The Court finds that the ALJ did not commit reversible error in discussing and analyzing Plaintiff's anxiety and depression at step two, and thus, did not commit reversible error in

determining that these impairments were not severe because that finding was supported by substantial evidence.  The ALJ's non-severity determination turned on the ALJ's assessment of Plaintiff's mental impairments in accordance with the paragraph B criteria.  The record supports the reasons proffered by the ALJ for assessing mild or no limitation, including, but not limited to: (1) Plaintiff's own reports regarding a lack of memory or cognitive problems; (2) Plaintiff's reports of spending time with others, keeping up with friends and family on a regular basis, and going out shopping and dining; (3) unremarkable mental status examination findings; and (4) relevant treatments records, including those demonstrating symptom improvement with medication.  *See Huff v. Astrue*, 275 F. App'x 713, 717 (9th Cir. 2008) (finding ALJ did not err in finding claimant's depression non-severe where medical records showed the impairment improved with treatment).

Plaintiff argues that the ALJ improperly determined that her mental health symptoms were "largely situational."  [Dkt. 10 at 13].  Plaintiff argues that the ALJ failed to "cite any Social Security policy or regulation that allows for an impairment to be deemed non-severe because it was exacerbated by things such as stress and medications."  *Id.*  Plaintiff's argument ignores the context of the ALJ's findings.  First, the ALJ did not find that the mental impairment was non-severe simply because it was exacerbated by stress.  Rather, the ALJ found the Plaintiff's depressive symptoms occurred during times of personal stress, and further cited and evaluated the paragraph B criteria with this in mind, in particular the fourth factor (adapting or managing oneself) where the ALJ found that Plaintiff "occasionally was anxious or depressed, but there is no evidence that she exhibits problems with temper-control."  *See* AR 3096-97.  Second, the ALJ did not find that the impairment was non-severe because it was "exacerbated by . . . medications." [Dkt. 10 at 13].  Rather, the ALJ noted that Plaintiff "told her doctor that if she did not take her pain medication, Norco, at bedtime, she would experience withdrawal symptoms and feel anxiety the next morning" and thus found that the failure to take medication was related to anxiety (and not the medication itself).  [AR 3096].  Further, the ALJ supported the non-severity finding by referencing treatment records in which Plaintiff's medical providers noted her conditions to be situational, and where Plaintiff herself characterized the conditions as such.  *See Menchaca v.*

*Comm'r*, No. 6:15-cv-01470-HZ, 2016 WL 8677320, at *7 (D. Ore. Oct. 7, 2016) ("The ALJ's reliance on this evidence to conclude that [the claimant's] symptoms were sometimes caused by situational stressors is a reasonable interpretation of the record, and thus the Court finds it a legitimate reason to discount her credibility.").

Plaintiff argues that the ALJ improperly relied on her reported activities of daily living to find that her mental impairments were not severe. [Dkt. 10 at 14]. Specifically, Plaintiff argues that her ability to perform certain household chores does not establish that she would not be functionally limited in a work setting. *Id.* However, Plaintiff does not argue that the ALJ mischaracterized this evidence or failed to discuss other evidence suggesting that her impairments were severe. *See Robin S. v. Saul*, No. 20-cv-07168-JSC, 2021 WL 4295295, at *3 (N.D. Cal. Sept. 21, 2021).

Finally, Plaintiff argues that there is evidence in the record suggesting that her symptoms are severe. [Dkt. 10 at 13; Dkt. 13 at 4]. However, Plaintiff cites evidence from different parts of the record, separated by years, showing the fact that Plaintiff was anxious and crying during an examination in February 2007, looked sad, and was "very upset and stressed" and "not coping" during an examination in February 2009. [Dkt. 10 at 13]. The ALJ did not disregard this evidence but found that Plaintiff did indeed suffer periods of anxiety and depression. [AR 3096]. While Plaintiff's argument here disputes the ALJ's analysis and conclusion as to the severity of these symptoms, Plaintiff has now shown that there was a complete disregard of evidence or facts by the ALJ—a dispute over the interpretation of the evidence is not the same thing as ignoring evidence. *See Batson v. Comm'r of the SSA*, 359 F.3d 1190, 1196 (9th Cir. 2004) ("Where evidence reasonably supports either confirming or reversing the ALJ's decision, we may not substitute our judgment for that of the ALJ.").

Accordingly, because there is substantial evidence in the record to support the ALJ's finding that Plaintiff possessed at most "mild" limitations in each of the four Paragraph B categories, the ALJ did not commit reversible error in concluding that Plaintiff's mental impairments were not severe. *See* 20 C.F.R. §§ 404.1520a(d)(1), 416.920a(d)(1) ("[U]nless the evidence otherwise indicates that there is more than a minimal limitation in [a claimant's] ability

1   to do basic work activities," a rating of "none" or "mild" generally means that a claimant's

2   impairments are not severe.); *see also Craig V. v. Kijakazi*, No. 22-cv-03357-SVK, 2023 WL

3   6370893, at *10 (N.D. Cal. Aug. 10, 2023) (finding no error in ALJ's evaluation of mental

4   impairments at step two).

5           Consideration of Mental Impairments in Assessment of RFC

6           Once the ALJ finds that the claimant has at least one severe impairment at step two, the

7   ALJ must consider all of the claimant's impairments when formulating the claimant's RFC,

8   including those impairments the ALJ determined to be non-severe.  *Buck*, 869 F.3d at 1048-49.

9   Thus, even if an ALJ erred by finding a particular impairment to be non-severe at step two, the

10  error is harmless so long as the limitations of that impairment are considered when formulating the

11  claimant's RFC.  That is, an RFC must account for *all* of a claimant's medically determinable

12  impairments (whether severe or non-severe) and must reflect the total limiting effects of all such

13  impairments.  20 C.F.R. §§ 404.1545(e), 416.945(e); *Buck*, 869 F.3d at 1049; *see also* SSR 96-8p,

14  1996 WL 374184, at *5 ("In assessing RFC, the adjudicator must consider limitations and

15  restrictions imposed by all of an individual's impairments, even those that are not 'severe.'").   If

16  the ALJ fails to account for even non-severe limitations in the RFC, the error is cause for reversal.

17          While the regulations require the ALJ to *consider* the limiting effects of all impairments

18  (both severe and non-severe) in assessing the RFC, they do not require the ALJ to translate every

19  non-severe impairment into a functional limitation in the RFC.  *D.L.P. v. Kijakazi*, No. 21-cv-

20  00792-VKD, 2022 WL 4472064, at *3 (N.D. Cal. Sept. 26, 2024) (citing *Rania v. Kijakazi*, No.

21  2:20-cv-01541 MCE CKD (SS), 2021 WL 5771663, at *3 (E.D. Cal. Dec. 6, 2021), *report and*

22  *recommendation adopted*, 2022 WL 95228 (E.D. Cal. Jan. 7, 2022); *Medlock v. Colvin*, No. CV

23  15-9609-KK, 2016 WL 6137399, at *5 (C.D. Cal. Oct. 20, 2016)).  "Provided the ALJ does not

24  rely on boilerplate language, but actually reviews the record and specifies reasons supported by

25  substantial evidence for not including the non-severe impairment, the ALJ has not committed legal

26  error."  *Id.* (quoting *Medlock*, 2016 WL 6137399, at *5).

27          The limitations identified in the paragraph B criteria "are not an RFC assessment but are

28  used to rate the severity of mental impairment(s) at steps 2 and 3 of the sequential evaluation

United States District Court
Northern District of California

1  process."  SSR 96-8p, 1996 WL 374184, at *5.  "The mental RFC assessment used at steps 4 and

2  5 of the sequential evaluation process requires a more detailed assessment by itemizing various

3  functions contained in the broad categories found in paragraph[] B."  *Id.*

4       In this case, the ALJ's RFC formulation failed to discuss any limitations for Plaintiff's

5  mental impairments, and thus, were incomplete.  The ALJ's failure was legally erroneous because

6  it affected the hypothetical questions posed to the Vocational Expert.  Remand on this issue is,

7  therefore, required.  *See Ana O. v. O'Malley*, No. 23-cv-04857-VC, 2024 WL 1460366, at *1

8  (N.D. Cal. Ap. 4, 2024) (finding reversible error where the ALJ "did not mention any mental

9  impairments beyond step two of the evaluation process," "did not include any limitations

10  reflecting the claimant's mental impairments in her RFC," and "did not specify why the claimant's

11  mental impairments did not limit her ability to work"); *Jin v. Kijakazi*, No. 21-cv-00379-BLF,

12  2022 WL 2981830, at *4 (N.D. Cal. July 28, 2022) (reversing and remanding where ALJ's RFC

13  analysis was "entirely devoid of any mention of the evidence of mental impairments"); *Geraldine*

14  *C.B. v. Kijakazi*, No. 21-cv-1750-DEB, 2023 WL 6390432, at *3-4 (S.D. Cal. Sept. 29, 2023)

15  (finding ALJ erred in failing to discuss the claimant's non-severe mental impairments in

16  connection with the RFC); *Victor R. v. O'Malley*, No. 3:23-cv-00501-GPC-BGS, 2024 WL

17  392616, at *4 (S.D. Cal. Feb. 1, 2024) (finding ALJ erred by not including mental limitations in

18  the RFC or explaining why mental impairments were not limiting).

19  **III.    Adverse Credibility Finding**

20       Plaintiff argues that the ALJ erroneously rejected her subjective symptom testimony

21  regarding the side effects of her narcotic pain and anti-anxiety medications, as well as the effects

22  of her chronic pain, in finding that she was no longer disabled after August 31, 2005.  [Dkt. 10 at

23  14-18].

24       A claimant's subjective symptoms, if credited, are relevant to the determination of a

25  claimant's RFC.  *Ferguson*, 95 F.4th at 1198 (citing 20 C.F.R. § 416.945(a)(1)).  The Ninth

26  Circuit has established a two-step analysis for determining the extent to which a claimant's

27  symptom testimony must be credited.  *Trevizo v. Berryhill*, 871 F.3d 664, 678 (9th Cir. 2017).

28  "First, the ALJ must determine whether the claimant has presented objective medical evidence of

United States District Court
Northern District of California

an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged." *Ferguson*, 95 F.4th at 1199 (quoting *Garrison v. Colvin*, 759 F.3d 995, 1014 (9th Cir. 2014)).  "If the claimant meets the first step of this analysis and there is no evidence of malingering, the ALJ [at the second step] can reject the claimant's testimony about the severity of their symptoms only by offering specific, clear and convincing reasons for doing so." *Id.* (quoting *Garrison*, 759 F.3d at 1014-15) (alteration omitted).

The clear and convincing standard requires the ALJ to "specifically identify" which portions of the claimant's testimony the ALJ finds "not to be credible" and "explain what evidence undermines that testimony." *Lambert v. Saul*, 980 F.3d 1266, 1277 (9th Cir. 2020) (quoting *Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1102 (9th Cir. 2014) (remaining citations omitted).  "This is not an easy requirement to meet: 'The clear and convincing standard is the most demanding required in Social Security cases.'" *Trevizo*, 871 F.3d at 678 (quoting *Garrison*, 759 F.3d at 1014-15).  The ALJ determines "credibility, resolve[s] conflicts in the testimony, and resolve[s] ambiguities in the record." *Lambert*, 980 F.3d at 1277 (quoting *Treichler*, 775 F.3d at 1098). The ALJ may not "reject a claimant's subjective complaints based solely on a lack of medical evidence to fully corroborate the alleged severity of pain." *Smartt*, 53 F.4th at 494 (quoting *Burch v. Barnhart*, 400 F.3d 676, 681 (9th Cir. 2005)).  Nor may the ALJ "justify a credibility finding 'by ignoring competent evidence in the record that suggests another result.'" *Diedrich v. Berryhill*, 874 F.3d 634, 643 (9th Cir. 2017) (quoting *Gallant v. Heckler*, 763 F.2d 1450, 1456 (9th Cir. 1984)).

Here, Plaintiff alleges physical impairments resulting from spine and joint impairments, numerous surgeries, and carpal tunnel syndrome, as well as mental impairments resulting from anxiety, depression, and the use of narcotics for pain and anti-anxiety medications.  [Dkt. 10 at 14-18].  In her written decision, the ALJ found that Plaintiff's impairments could reasonably have given rise to the severe pain and functional limitations to which Plaintiff testified that she suffers. [AR 3104].  However, the ALJ discounted Plaintiff's testimony on this point with only the following statement: "the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence

in the record for the reasons explained in this decision." *Id.* Because the ALJ's decision relied on expressly rejecting the credibility of Plaintiff's testimony about pain, the ALJ was required to make the legally mandated subsidiary findings required by the Ninth Circuit as to Plaintiff's own testimony (*i.e.*, specifically identify the testimony found not credible and explain what evidence supports that finding). Because the ALJ made no finding that Plaintiff was malingering, the ALJ was required to give specific, clear, and convincing reasons in support of her adverse credibility finding. *Garrison*, 759 F.3d at 1014-15.

In her written decision, the ALJ found that Plaintiff's symptom testimony was "generally consistent with the evidence from June 1, 2004 through August 31, 2005." [AR 3101]. However, the ALJ found that Plaintiff's testimony concerning the intensity, persistence, and limiting effects of her symptoms after August 31, 2005 was "not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision." [AR 3104].

First, in making this adverse credibility finding, the ALJ does not cite to any specific evidence or the specific "reasons explained in this decision." *Id.* To meet the clear and convincing standard, it is not sufficient for an ALJ to simply summarize the medical evidence at issue and make a generalized statement that the record undermines the claimant's testimony. *See Lambert*, 980 F.3d at 1277; *Brown-Hunter v. Colvin*, 806 F.3d 487, 490-91 (9th Cir. 2015). Rather, to meet the clear and convincing standard, the ALJ must identify, with specificity, the inconsistent portions of the medical report, link that evidence to the aspects of the testimony that are deemed not credible, and explain why the two are incongruent. *Lambert*, 980 F.3d at 1277. The ALJ failed to satisfy this demanding standard here.

Even giving the ALJ the benefit of the Court's own review of the written decision to ascertain what "evidence" and "reasons explained in this decision" the ALJ may have intended to rely upon, there are essentially two sets of findings by the ALJ which are potentially applicable: (1) medical evidence for the post-August 2005 time period showing Plaintiff's recovery from surgeries, minimal complaints of pain, conservative treatment regimens, normal examinations, and unremarkable clinical findings; and (2) Plaintiff's reported daily activities, including that she "was able to do activities such as flying to Southern California, caring for family members and other

activities." [AR 3102-04]. The ALJ references, among other things, a record, dated January 30, 2009, showing that Plaintiff had a normal gait and station, 5/5 motor strength, a normal range of motion, and sensation of the arms, knees, and neck [AR 3102; *see* AR 1123]; a record, dated January 22, 2007, recommending only medications and exercise as treatment [AR 765]; a record, dated November 26, 2008, stating that Plaintiff was "alert, well appearing, and in no distress" [AR 1079]; and a record, dated May 21, 2009, which states that Plaintiff "walks daily" [AR 1239].

In her written decision, the ALJ found that Plaintiff's symptoms testimony was "generally consistent" with the evidence from June 1, 2004 through August 31, 2005, but "not entirely consistent" with the evidence for the period after August 31, 2005. However, the ALJ does not identify *which* portions of Plaintiff's testimony are contradicted by *which* portions of the post-August 31, 2005 record. Nor does the ALJ explain why she found such portions of Plaintiff's symptoms testimony consistent with the record for the period from June 1, 2004 through August 31, 2005 but inconsistent with the record thereafter. While the ALJ summarized the extensive medical record here, the ALJ did not link specific medical evidence to the relevant testimony about Plaintiff's symptoms for the post-August 31, 2005 period and explain why the former rendered the latter not credible. *See Brown-Hunter*, 806 F.3d at 490-91 (explaining that the relevant inquiry is not the length of the summary of medical evidence, it is the extent to which the ALJ connects the relevant medical record to the testimony that is purportedly not credible).

With regard to the evidence regarding Plaintiff's daily activities, the ALJ's written decision similarly did not link specific daily activities evidence to the relevant testimony about Plaintiff's symptoms after August 31, 2005. To the extent that the ALJ relied on Plaintiff's reports of traveling to Southern California and caring for family members to support an adverse credibility finding for the post-August 2005 period, the ALJ appears to have either ignored or mischaracterized aspects of Plaintiff's testimony necessary to understand the scope of Plaintiff's reported activities. *See Garrison*, 759 F.3d at 1016 (finding ALJ's selective presentation of the claimant's reported daily activities erroneous, where the ALJ failed to note that the claimant had to rest between activities, needed help to do the activities, and could not always complete the activities given her pain); *A.P. v. Kijakazi*, No. 23-cv-01184-EMC, 2024 WL 116307, at *10 (N.D.

Cal. Jan. 10, 2024) ("The ALJ cannot mischaracterize statements and documents in the record or take these out of context in order to reach [her] conclusion on the claimant's credibility."). Specifically, Plaintiff testified that she traveled to Southern California merely to visit her ailing parents, that she relied on wheelchair assistance at the airports to fly to and from there, that her father had his own private caretakers (and her involvement was limited to no more than an hour or so per day], and that her adult brother assisted her on these visits.  [AR 262, 276, 3152, 3507-08]. The ALJ did not discuss these limitations on Plaintiff's ability to travel and her limited involvement in personally providing physical care for her father, much less provide specific, clear, and convincing reasons for disregarding them.  *See Revels v. Berryhill*, 874 F.3d 648, 668 (9th Cir. 2017) (holding that the ALJ erred by not providing "clear and convincing" evidence to discredit the claimant on the basis of activities of daily living).

Further, the ALJ discredited Plaintiff's symptoms testimony, in part, because Plaintiff "was able to travel to Southern California every three to six weeks for family commitments," where the exhibit cited by the ALJ states instead that Plaintiff would be staying in Los Angeles with her family for three to four weeks (and not that she travelled every three to six weeks).  [AR 3103; *see* AR 1178 ("I'll be gone for 3-4 weeks[.]")].  Plaintiff is correct that the evidence cited by the ALJ does not relate to frequency of travel, just the duration of a trip.  Accordingly, the Court finds that the ALJ's findings regarding Plaintiff's travel are not supported by substantial evidence, and that the cited evidence is not a legally (or factually) proper basis to show by clear and convincing why Plaintiff's testimony should be disregarded.

In discounting Plaintiff's symptoms testimony, the ALJ also references Plaintiff's purported ability to do "other activities."  [AR 3102 ("The claimant recovered from her surgeries and was no longer limited as she was previously.  During this time she was able to do activities such as flying to Southern California, caring for family members and other activities.")].  The ALJ does not specify what these "other activities" are, much less explain how such activities constitute specific, clear, and convincing reasons to undermine Plaintiff's testimony regarding pain and symptoms.  *See Garrison*, 759 F.3d at 1016 (finding that the "supposed inconsistencies" identified by the ALJ between the claimant's daily activities and symptoms testimony did not meet the clear

1    and convincing standard).

2      Accordingly, the Court finds that the ALJ erred by not linking specific medical evidence to

3    the relevant testimony about Plaintiff's symptoms and pain (which are supported by objective and

4    uncontroverted medical evidence) and further erred by failing to adequately explain why the

5    former rendered the latter not credible.  The Court finds that the ALJ's written decision

6    mischaracterizes and/or ignores portions of Plaintiff's testimony as to her daily activities and

7    limitations and also fails to provide specific, clear, and convincing reasons for discrediting

8    Plaintiff's testimony on the basis of these activities.  Remand on these issues is, therefore,

9    required.

10   **IV. Continuing Disability Review Analysis**

11     Plaintiff next argues that the ALJ erred in finding that her capacity to remain on-task

12   improved such that she was no longer disabled as of September 1, 2005.  [Dkt. 10 at 20-25].

13   Specifically, Plaintiff points to the fact that the ALJ's RFC assessment for the period from June 1,

14   2004 through August 31, 2005 limited Plaintiff to being "off task or non-productive for 20% of the

15   workday or workweek" due to "any number of reasons," while the ALJ's RFC assessment for the

16   post-August 31, 2005 period includes no such limitation. *Id.* at 22; *compare* AR 3098, *with* AR

17   3102-03.  Plaintiff argues that the ALJ's finding that Plaintiff's ability to remain on-task improved

18   as of August 31, 2005 was not supported by substantial evidence, because the ALJ failed to

19   conduct a side-by-side evaluation of the evidence as required by the governing regulations.  [Dkt.

20   10 at 22 (citing 20 C.F.R. § 404.1594)].

21     As discussed above, the ALJ must follow an eight-step sequential evaluation process to

22   determine whether an individual continues to be under a disability.  At step three, the ALJ

23   determines whether there has been "medical improvement," *i.e.,* whether there has been

24   any decrease in the medical severity of the claimant's impairments which were present at the time

25   of the most recent favorable medical decision finding that the claimant was disabled or continued

26   to be disabled.  The regulations make clear that any "determination that there has been a decrease

27   in medical severity must be based on changes (improvement) in the symptoms, signs and/or

28   laboratory findings associated with [the claimant's] impairment(s)."  20 C.F.R. § 404.1594(b)(1).

United States District Court
Northern District of California

The Court agrees with Plaintiff. Here, the ALJ failed to provide any analysis or discussion regarding how Plaintiff's capacity to remain on task improved after August 31, 2005, much less tie that analysis to specific evidence in the record. This error in failing to properly assess the extent to which Plaintiff's ability to remain on task improved impacted the ALJ's RFC assessment and further impacted the hypothetical questions posed to the Vocational Expert. This failure to explain and analyze this issue constitutes reversible legal error. Remand on this issue, is thus, required as well.

### V.     Whether to Remand for An Award of Benefits

Finally, Plaintiff asks the Court to remand the case for the payment of benefits, or alternatively, for further proceedings. [Dkt. 10 at 26-27]. When a court reverses an ALJ's decision, "the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation." *Benecke v. Barnhart*, 379 F.3d 587, 595 (9th Cir. 2004) (quoting *INS v. Orlando Ventura*, 537 U.S. 12, 16 (2002)). A remand for award of benefits is proper, however, where (1) "the ALJ has failed to provide legally sufficient reasons for rejecting evidence, whether claimant testimony or medical opinion;" (2) "the record has been fully developed and further administrative proceedings would serve no useful purpose;" and (3) "if the improperly discredited evidence were credited as true, the ALJ would be required to find the claimant disabled on remand." *Brown-Hunter*, 806 F.3d at 495. Even if all three requirements are satisfied, the Court retains flexibility to determine the appropriate remedy. *Id.*

The Court finds that remand for further proceedings is most appropriate here. The first factor is met because the ALJ failed to provide sufficient legal reasons for discrediting Plaintiff's symptoms testimony. The second factor is not met, however, because further proceedings are necessary so that all of the medical evidence that is entitled to credit, and all of Plaintiff's impairments, may be considered in formulating an appropriate RFC. It is unclear whether the third factor is met, because it is unclear on this record what would constitute an appropriate RFC and whether there are jobs in the economy for an individual with such an RFC. The Court thus remands for further proceedings consistent with this Order.

United States District Court
Northern District of California

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**CONCLUSION**

For the foregoing reasons, **IT IS ORDERED THAT**:

1. The Commissioner's final decision is **REVERSED** and this case is **REMANDED** to the Commissioner for further administrative proceedings consistent with this Order.

2. Plaintiff is awarded costs pursuant to Federal Rule of Civil Procedure 54(d)(1).

   **IT IS SO ORDERED.**

Dated:  September 30, 2024

_____

PETER H. KANG
United States Magistrate Judge